1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    LONNIE LEE POSLOF,                      Case No. 24-cv-06004-PCP
                                                      24-cv-06146-PCP
           Plaintiff,
8                                            **ORDER DISMISSING COMPLAINTS**
                                             **WITH LEAVE TO AMEND IN PART;**
9          v.                                **ORDER TO SHOW CAUSE; ORDER**
                                             **GRANTING *IN FORMA PAUPERIS***
10   CARLOS ARCE, et al.,                    **APPLICATION AND MOTION TO**
                                             **AMEND; DENYING ALL OTHER**
11         Defendants.                       **MOTIONS**

12                                           Re: Dkt. Nos. 1-3, 6, 8, 12-14, 15, 17, 20-
                                             24, 27, 28, 31, 34 in Case No. 24-cv-06004;
13                                           Dkt. Nos. 2, 18, 27 in Case No. 24-cv-
                                             06146
14

15         Lonnie Poslof, an inmate at the Salinas Valley State Prison ("SVSP") in Soledad,

16   California, has two pending *pro se* civil rights actions filed under 42 U.S.C. § 1983. *See Poslof v.*

17   *Arce*, Case No. 24-cv-6004-PCP (N.D. Cal. filed Aug. 21, 2024) ("6004 Action"); *Poslof v. Cal.*

18   *Dep't of Corr. & Rehab.*, Case No. 24-6146-PCP (N.D. Cal. filed Aug. 25, 2024) ("6146 Action").

19   For the reasons stated below, these actions are dismissed with leave to amend.

20   **I.     Background**

21         The facts underlying Mr. Poslof's claims are discussed below. *See infra* IV.

22         In August 2023, Mr. Poslof filed five civil rights actions in this District.[1] The first lawsuit

23   was dismissed on abstention grounds and for failure to prosecute, and Mr. Poslof voluntarily

24   dismissed the second and third actions.

25

26   _____

27   [1] *See Poslof v. Arce*, Case No. 24-cv-5444-PCP (N.D. Cal., injunctive relief motion filed Aug. 15,
     2024); *Poslof v. Arce*, Case No. 24-cv-5446-PCP (N.D. Cal., mandamus petition filed Aug. 12,
28   2024); *Poslof v. Warden*, Case No. 24-5447-PCP (N.D. Cal., mandamus petition filed Aug. 14,
     2024); 6004 Action; 6146 Action.

United States District Court
Northern District of California

Mr. Poslof moved to amend the Complaint in the 6004 Action and filed a First Amended Complaint in the 6146 Action. The Complaint in the 6004 Action and the First Amended Complaint in the 6146 Action now are ripe for review. *See* 28 U.S.C. § 1915A.

## II.    Legal Standard

Federal courts must screen any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The court must identify cognizable claims and dismiss claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III.    General Defects

Multiple defects affect the entirety of Mr. Poslof's pleadings. The Court addresses those defects here so that Mr. Poslof may correct them upon amendment.

### A.    Abstention

In each of Mr. Poslof's pending cases, his pleadings refer to state court litigation. *See* 6004 Compl. ¶ 41 (referring to state criminal proceedings related to a prison disciplinary charge that Mr. Poslof challenges); *see also* 6146 FAC ¶¶ 32–33 (stating Mr. Poslof has raised his claims to the California Supreme Court and in "Government Claims Board complaints"). The Court previously explained to Mr. Poslof that he cannot pursue the same claims in simultaneous state and federal lawsuits, nor can he use a federal lawsuit to appeal a state court decision. *See* Dkt. No. 5, *Poslof v. Arce*, Case No. 24-5444-PCP (N.D. Cal. Aug. 27, 2024) (ordering Mr. Poslof to show cause why the action should not be dismissed on abstention grounds).

The Court does not dismiss Mr. Poslof's actions on abstention grounds at this time. But because this appears to be a recurring defect, and because Mr. Poslof must amend his pleadings for the reasons discussed herein, the Court concludes it would be expeditious to resolve the abstention question on the pleadings. Accordingly, if he chooses to amend, Mr. Poslof is ORDERED TO SHOW CAUSE why each claim should not be dismissed on abstention grounds. If Mr. Poslof chooses to amend his pleadings in the 6004 and 6146 Actions, he must state clearly whether each

United States District Court
Northern District of California

claim has been raised to a state court; specify whether the claim is pending or has been addressed by the state court; and for those claims which have been addressed, identify what order the state court issued. If Mr. Poslof concludes that all his claims are barred by the doctrines described below, he may move to voluntarily dismiss the 6004 and 6146 Actions.[2]

### 1.     *Younger v. Harris*

In *Younger v. Harris*, 401 U.S. 37 (1971), the United States Supreme Court held that principles of comity and federalism prohibit a federal court from interfering with ongoing state criminal proceedings by granting injunctive or declaratory relief absent extraordinary circumstances. *See id.* at 43–54.

*Younger* applies throughout appellate proceedings, requiring that state appellate review of a state court judgment be exhausted before federal court intervention is permitted. *See Dubinka v. Judges of the Super. Ct.*, 23 F.3d 218, 223 (9th Cir. 1994). *Younger* abstention has been expanded to cover civil enforcement actions and is required "when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions *or* involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *ReadyLink Healthcare v. State Compensation Insurance Fund, et al.*, 754 F.3d 754, 759 (9th Cir. 2014) (emphasis added, citation omitted); *see also Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982 (*Younger* applies to noncriminal proceedings when important state interests are involved). An additional requirement has also been articulated by the Ninth Circuit: that "the federal court action would enjoin the state proceeding or have the practical effect of doing so, i.e., would interfere with the state proceeding in a way that *Younger* disapproves." *SJSVCCPAC v. San Jose*, 546 F.3d 1087, 1092 (9th Cir. 2008) (citing cases).

The question of whether these elements are fulfilled turns on information about the state-court proceedings, which Mr. Poslof has yet to provide. Evaluating the second *ReadyLink* element

---

[2] The Court notes for Mr. Poslof's benefit that voluntary dismissals do not incur strikes under the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915 (stating that a strike only is accrued if an action is "dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted").

United States District Court
Northern District of California

requires the Court to look at the general class of proceedings in which the state court action belongs. *See Bristol-Myers Squibb Co. v. Connors*, 979 F.3d 732, 737–38 (9th Cir. 2020) (articulating this requirement and concluding that *Younger* abstention applied to federal-plaintiffs' case seeking to enjoin State's state-court civil enforcement action against them); *see, e.g.*, *Jackson v. Nevada DHHS*, No. 217CV03040JCMNJK, 2018 WL 8367502, at *2 & n.4 (D. Nev. Jan. 17, 2018) (concluding the second element was met where petitioner claimed he was being "treated unfairly in family court proceedings regarding owed child support"), *report and recommendation adopted*, No. 217CV3040JCMNJK, 2019 WL 2232468 (D. Nev. May 23, 2019). For example, *Younger* could be implicated if Mr. Poslof sought state-court invalidation of his prison disciplinary proceeding because he believes it was at odds with his state conviction, or if Mr. Poslof asked the state court to enforce a prior settlement regarding prison conditions or healthcare. Without knowing the claims Mr. Poslof has filed in state court or the relief he seeks there, the Court cannot determine whether Mr. Poslof's pending state actions "are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts." *ReadyLink*, 754 F.3d at 759.

Similarly, evaluating the third element requires the court to "consider[] its significance broadly." *Baffert v. Cal. Horse Racing Bd.*, 32 F.3d 613, 618 (9th Cir. 2003). Thus, state-court actions concerning the regulation of horse racing or of local elections have been found to implicate *Younger*. *See id.*; *see, e.g.*, *SJSVCCPAC*, 546 F.3d at 1094 (concluding that the regulation of local elections was an important state interest). Again, without knowing more about Mr. Poslof's state-court lawsuits, the Court cannot determine whether those lawsuits "implicate an important state interest." *ReadyLink*, 754 F.3d at 759.

Thus, the Court requires more information to determine whether *Younger* abstention might be required.

### 2.    *Rooker-Feldman*

Under *Rooker-Feldman*, lower federal courts generally lack subject matter jurisdiction to review state court decisions outside the context of a habeas petition, and state court litigants may only obtain federal review by filing a petition for a writ of certiorari in the Supreme Court of the

4

United States, *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486–87 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). The *Rooker-Feldman* doctrine applies even when the state court judgment is not made by the highest state court, *see Worldwide Church of God v. McNair*, 805 F.2d 888, 893 n.3 (9th Cir. 1986); when federal constitutional issues are at stake, *see Branson v. Nott*, 62 F.3d 287, 291 (9th Cir. 1995); *Mullins v. Oregon*, 57 F.3d 789, 792 (9th Cir. 1995); and when the federal court would evaluate a state court's review of determinations made by state administrative bodies, *see Feldman*, 460 U.S. at 468, 485–86, The *Rooker-Feldman* doctrine bars federal district courts "from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004); *see Skinner v. Switzer*, 562 U.S. 521, 532 (2011).

Accordingly, if Mr. Poslof has filed a state-court lawsuit raising the same claims he brings here and he lost that lawsuit, *Rooker-Feldman* may bar this Court from considering Mr. Poslof's federal claims.

### B.    Exhaustion

Mr. Poslof states that he wants to pursue unexhausted claims as well as exhausted claims. *See* 6004 Compl. ¶ 46. This is impermissible. "Exhaustion in [§ 1983] prisoner cases … is mandatory." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (discussing 42 U.S.C. § 1997e(a)); *Ross v. Blake*, 578 U.S. 632, 638–39 (2016) (explaining the mandatory language of § 1997e(a) forecloses judicial discretion to craft exhaustion exceptions). All available remedies must be exhausted, and exhaustion is a prerequisite to suit. *See Porter*, 534 U.S. at 524; *see also Booth v. Churner*, 532 U.S. 731, 741 (2001). The Court cannot ignore a failure to exhaust. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

Although Mr. Poslof can proceed on his exhausted claims, any unexhausted claims must be deleted from any amended pleading. Because his pleadings suggest that some of Mr. Poslof's claims have not been exhausted, if Mr. Poslof chooses to amend, he must state for each claim whether it has or has not been exhausted.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.    Joinder

The 6004 and 6146 Actions each contain multiple unrelated claims, *see infra* IV, and in some instances have overlapping claims. If he chooses to amend, Mr. Poslof must fix this joinder problem.

The Federal Rules of Civil Procedure allow multiple claims to be filed in the same action, but those claims must be related to one another. *See* Fed. R. Civ. P. 18(a) ("A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party."); Fed. R. Civ. P. 20(a)(2) (allowing claims to be joined if the claims against all defendants "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences; and" a "question of law or fact common to all defendants will arise in the action."

The Seventh Circuit's explanation of joinder principles is helpful:

> [M]ultiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that this 50–claim, 24–defendant suit produced but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (summarizing the effect of Rules 18 and 20 and discussing 28 U.S.C. § 1915(g)). *See also Standley v. Montana*, Appeal No. 22-35824, 2024 WL 1253797, at *1 (9th Cir. Mar. 25, 2024) (affirming the district court's decision not to join a defendant to the action at bar, because the claims against the new defendant "d[id] not arise out of the same 'transaction' or 'occurrence' as the [other] claims") (citing *George*, 507 F.3d at 607).

If Mr. Poslof chooses to amend his pleadings in the 6004 and 6146 Actions, he clearly must state how each claim brought in each action is related to every other claim filed in that action. If Mr. Poslof concludes that any claim is not related, he should voluntarily dismiss that claim from this action and pursue it in an independent lawsuit.

United States District Court
Northern District of California

### D.    Improper Defendants

Mr. Poslof sues over 200 defendants in the 6004 Action and over 100 defendants in the 6146 Action. It is apparent from the pleadings that many of these defendants did not directly wrong Mr. Poslof, and many others are being sued on legally prohibited theories. These defendants must be removed from any amended pleading.

To sue an individual defendant, Mr. Poslof must show that the defendant's actions both actually and proximately injured him. *Lemire v. Cal. Dept. of Corr. & Rehab.*, 726 F.3d 1062, 1085 (9th Cir. 2013). A person may only be liable in a civil rights suit "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which [the plaintiff complains]." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (emphasis in original) (citations and internal quotation marks omitted). The Ninth Circuit's explanation from a failure-to-protect case is instructive:

> When plaintiffs, such as the inmates, seek to hold an individual defendant personally liable for damages, the causation inquiry between the deliberate indifference and the eighth amendment deprivation must be more refined. We must focus on whether the individual defendant was in a position to take steps to avert the stabbing incident, but failed to do so intentionally or with deliberate indifference. In order to resolve this causation issue, we must take a very individualized approach which accounts for the duties, discretion, and means of each defendant…. Especially when, as in this case, a prisoner seeks to hold a prison employee individually liable because another prisoner attacked him, the prisoner must establish individual fault…. The prisoner must set forth specific facts as to each individual defendant's deliberate indifference.

*Leer*, 844 F.2d at 633–34 (internal citations omitted).

Mr. Poslof appears to have sued defendants who lack a sufficient connection to the harms he alleges. For example, Mr. Poslof sues defendant Mosely over problems with Mr. Poslof's inmate trust account. *See* 6004 Compl. ¶¶ 22-28. The pleadings make clear that defendant Mosely reviews inmate appeals for the California Department of Corrections and Rehabilitation ("CDCR").[3] Mr. Poslof does not explain any connection between defendant Mosely and inmate

---

[3] To the extent Mr. Poslof wants to sue defendant Mosely for denying an inmate appeal, this also is impermissible. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("Ramirez's claimed

7

United States District Court
Northern District of California

trust accounts, which appear to fall outside his duties. It also appears that defendant Mosely works at CDCR's Sacramento headquarters, hundreds of miles from SVSP. Without some facts showing how defendant Mosely *caused* the problem with Mr. Poslof's trust account despite working in a different location on different matters, defendant Mosely is not a proper defendant to that claim.

Mr. Poslof's claims also are defective as to Warden Arce, various deputy and assistant deputy wardens, and other individuals sued as supervisors. "In a § 1983 suit …. each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009). Under no circumstances is there liability under section 1983 on the theory that one is responsible for the actions or omissions of another. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989) ("There is no respondeat superior liability under section 1983."). It is insufficient for a plaintiff generally to allege that supervisors knew about a constitutional violation and that they generally created policies and procedures that led to the violation. *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012). To sue a supervisor, Mr. Poslof must identify what that person did which *directly caused* injury to Mr. Poslof.

Finally, Mr. Poslof cannot sue entities such as CDCR on the facts provided. To impose liability upon entities, a civil rights plaintiff must establish: "(1) that he possessed a constitutional right of which he [] was deprived; (2) that the [entity] had a policy; (3) that this policy amount[ed] to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy [was] the moving force behind the constitutional violation." *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (citations and quotation marks omitted) (explaining how a government agency may be held liable under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)). If a plaintiff cannot identify an unconstitutional policy of the government agency, the plaintiff must "produce evidence creating a triable issue of fact regarding the existence of an unconstitutional practice or custom." *Gordon v. Orange County*, 6 F.4th 961, 974 (9th Cir. 2021) (concluding no custom or practice was shown where the record lacked evidence of any

loss of a liberty interest in the processing of his appeals does not satisfy [the § 1983] standard, because inmates lack a separate constitutional entitlement to a specific prison grievance procedure."); *accord Young v. Voong*, 738 F. App'x 509, 510 (9th Cir. 2018) ("Young 'lack[s] a separate constitutional entitlement to a specific prison grievance procedure.'") (citation omitted)."

other event involving similar conduct or constitutional violations). "[A] single incident of unconstitutional activity is not sufficient to impose liability under *Monell*." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985). Here, Mr. Poslof has not identified any policy or practice which caused any of his injuries.

### E.    Pleading Standard

Even though a pro se litigant is entitled to a liberal interpretation of his complaint, that complaint still "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017) (affirming dismissal of a pro se prisoner complaint which did not meet the plausibility standard) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

Many of Mr. Poslof's allegations lack necessary facts. For example, Mr. Poslof claims that money was embezzled from his prison trust account by another inmate. *See* 6004 Compl. ¶¶ 22-28. Mr. Poslof does not name the official who approved the transfer of money and does not state when the alleged embezzlement occurred. *See id*. The Court therefore cannot determine if one of the 31 defendants named in this claim is the proper target of this claim nor determine whether the claim is timely. Similarly, Mr. Poslof claims he was deprived of a proper kosher diet but his only specific complaint about the food provided is that it lacked onions. *See id*. ¶¶ 36-38. Without some facts showing how the diet was calorically insufficient, unhygienic, or violated Jewish dietary laws, this is not a cognizable claim.

To ensure that all claims are cognizable on amendment, Mr. Poslof should provide "details (who, what, when, where, why and how)" for each claim. *Storms v. Paychex, Inc.*, No. LA-CV-21-01534-JAK-JEMX, 2023 WL 4291436, at *4 (C.D. Cal. May 24, 2023) (explaining pleading standards to a pro se litigant). That is, for each claim, Mr. Poslof should state: who directly caused harm to him; what that person did; when and where the action(s) occurred; and why or how the action(s) caused harm.

United States District Court
Northern District of California

**IV.    Specific Defects**

In addition to the general defects identified above, each of Mr. Poslof's claims suffer from defects specific to that claim. The Court addresses those defects here so that Mr. Poslof may correct or delete the claims upon amendment.

**A.    Cell Search and Typewriter**

Mr. Poslof claims that, during a cell search, he was retaliated against and deprived of his property.

Mr. Poslof states that in a "random systematic cell search," correctional officers detected the smell of homemade alcohol emanating from his cell. *See* 6004 Compl. ¶¶ 18-21. Once the officers found this alcohol, they flushed it down the toilet, making a mess of Mr. Poslof's cell. *See id*. Officers also temporarily confiscated Mr. Poslof's typewriter, which was damaged while in their possession. *See id*. These events appear unrelated to the other events discussed in the 6004 6146 Actions.

To the extent Mr. Poslof wishes to sue over the cell search itself, this claim is dismissed without leave to amend. The Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. *See Hudson v. Palmer*, 468 U.S. 517, 525-26 (1984).

Mr. Poslof claims that the officers' actions were retaliatory. On the facts alleged, he fails to state a claim for retaliation. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). Mr. Poslof has not identified any "protected conduct" that provoked the officers to confiscate his typewriter, has not adequately alleged that the confiscation was "because of" that unidentified protected conduct, has not explained how his First Amendment rights were chilled, and has not explained that the confiscation did not advance a legitimate correctional goal. Mr. Poslof may amend this claim. Because the facts underlying the retaliation claim are unrelated to

10

the other events identified in his pleadings, however, this claim must be pursued, if at all, in an independent lawsuit. *See supra* III.B.

Mr. Poslof appears to want to sue officers over the damage to his typewriter. This claim fails and cannot be salvaged on amendment. Ordinarily, the deprivation of a property interest requires prior due process of law, specifically notice and an opportunity for some kind of hearing. *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19 (1978). Where the deprivation was random and unauthorized, however, as Mr. Poslof alleges here, neither the negligent nor intentional deprivation of property states a due process claim under § 1983. *See Parratt v. Taylor*, 451 U.S. 527, 535-44 (1981) (applying rule where state employee negligently lost prisoner's hobby kit); *Hudson*, 468 U.S. at 533 (applying rule to intentional destruction of inmate's property). Instead, Mr. Poslof must pursue a state tort action. *See Zinermon v. Burch*, 494 U.S. 113, 128 (1990) (explaining that where state cannot foresee, and therefore provide meaningful hearing prior to, deprivation, the statutory provision for post-deprivation hearing or common law tort remedy for erroneous deprivation satisfies due process); *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895 and finding it an adequate post-deprivation remedy). Mr. Poslof's § 1983 claim for damage to his typewriter therefore is dismissed without leave to amend. If Mr. Poslof wishes to pursue a state-law tort claim for this damage, the Court notes that he must comply with California's presentation requirements for state-law claims. *See* Cal. Gov't Code § 910 *et. seq.*

### B.     Trust Account Problems

Mr. Poslof attempts to plead claims related to problems with his inmate trust account, but the claims are defective and unclear.

Mr. Poslof alleges that another inmate stole $400 from Mr. Poslof's trust account and blames prison employees for failing to follow the proper procedures set in place to protect inmates' trust accounts. *See* 6004 Compl. ¶¶ 22-28. As above, this random and unauthorized deprivation of property cannot be remedied in Mr. Poslof's § 1983 actions. Mr. Poslof's § 1983 claim for the loss of his prison trust account funds therefore is dismissed without leave to amend. As above, if Mr. Poslof wishes to pursue a state-law tort claim for this damage, he must comply

United States District Court
Northern District of California

1    with California's presentation requirements for state-law claims. *See* Cal. Gov't Code § 910 *et.*

2    *seq.* Because the trust account events appear unrelated to the other events discussed in the 6004

3    6146 Actions, claims related to those events must be filed in an independent lawsuit.

4        Mr. Poslof appears to challenge the requirement that he pay PLRA fees for numerous

5    federal lawsuits he has filed while incarcerated. *See* 6004 Compl. ¶ 25. His claim is unclear. To

6    the extent Mr. Poslof challenges the levying of filing fees, the Court notes that the PLRA,

7    including its three-strikes provision, has repeatedly been found constitutional. *See, e.g., Rodriguez*

8    *v. Cook*, 169 F.3d 1176, 1180–81 (9th Cir. 1999).

9        **C.    Canteen Problems**

10       Mr. Poslof attempts to plead claims related to problems in SVSP's canteen, but the claims

11   are defective and unclear.

12       Mr. Poslof alleges that the prison canteen embezzles and extorts from inmates. *See* 6004

13   Compl. ¶¶ 33–35. He alleges that he filed a grievance regarding these issues, and subsequently

14   was attacked in a bathroom by other inmates. *See id*. It is unclear whether Mr. Poslof intends to

15   sue for his loss of property under the embezzlement and extortion schemes, or whether he intends

16   to sue prison officials for failing to protect him from attack by other inmates. *See id*. If the former,

17   his claim fails and must be pursued in a state-law tort action as discussed above.

18       If the latter, Mr. Poslof has not provided sufficient facts. The failure of prison officials to

19   protect inmates from attacks by other inmates violates the Eighth Amendment when two

20   requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the

21   prison official is, subjectively, deliberately indifferent to inmate health or safety. *Farmer*, 511 U.S.

22   at 834. A prison official is deliberately indifferent if he knows of and disregards an excessive risk

23   to inmate health or safety by failing to take reasonable steps to abate it. *Id.* at 837. If Mr. Poslof

24   chooses to amend, he must provide facts showing that prison officials were aware of and

25   disregarded the risk to Mr. Poslof's safety. This claim is unrelated to the other claims alleged in

26   the 6004 and 6146 Actions, and so must be pursued in an independent lawsuit.

27

28

United States District Court
Northern District of California

### D.    Medication

Mr. Poslof claims that his Eighth Amendment rights were violated because he had trouble getting his full dose of medication, which was administered as a nutritional supplement. *See* 6004 Compl. ¶¶ 42–43. He explains that this medication was ordered by a physician but dispensed by kitchen staff. *See id*. It is unclear whether Mr. Poslof blames his doctor or the kitchen staff for the instances where he missed or was given a too-small dose of his nutritional supplement. *See id*.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986). The failure to provide prescribed medication properly may constitute deliberate indifference. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012) (finding plaintiff stated a claim for deliberate indifference where plaintiff's failure to receive prescribed treatment was due to defendant's failure to properly request the treatment and then inexplicable cancellation of a second treatment request). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *See McGuckin*, 974 F.2d at 1059.

To state a viable claim for the denial of medical care, Mr. Poslof must explain which specific medications were denied and by whom, whether that person knew of Mr. Poslof's medical need and treatment, and how this caused Mr. Poslof harm. This claim appears unrelated to the other claims raised in the 6004 and 6146 Actions, and so must be pursued in an independent lawsuit.

### E.    Living Conditions in General Population Housing

Mr. Poslof claims that, while housed in general population at SVSP, his cell(s) leaked and that he slipped in a puddle and fell. *See* 6004 Compl. ¶¶ 29–32. Mr. Poslof may be able to state an Eighth Amendment claim for dangerous conditions of confinement, but more information is required.

1    The Ninth Circuit has held that claims regarding slippery floors, without more, "do not

2    state even an arguable claim for cruel and unusual punishment." *Jackson v. Arizona*, 885 F.2d 639,

3    641 (9th Cir. 1989), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d

4    1122, 1130–31 (9th Cir. 2000).[4] The Ninth Circuit has repeatedly affirmed dismissals of a pro se

5    prisoner's action where the prisoner complained only of a leaking roof and the resulting

6    accumulation of water on a cell floor. *See, e.g., Pickett v. Nooth*, No. 17-35305, 2017 WL

7    4541428, at *1 (9th Cir. July 28, 2017) (dismissing appeal as frivolous where plaintiff claimed,

8    inter alia, that he slipped and fell in a puddle caused by a leaky roof); *Winnop v. Deschutes Cnty.*,

9    471 F. App'x 602 (9th Cir. 2012) (same); *Gilman v. Woodford*, 269 F. App'x 756 (9th Cir. 2008)

10   ("The district court properly determined that the allegations in Gilman's second amended

11   complaint failed to demonstrate that prison officials' conduct in maintaining the prison roof and

12   floors violated the Eighth Amendment.").

13       As these cases make clear, the Ninth Circuit generally finds conditions such as a wet and

14   slippery floor to be "minor safety hazards" that do not violate the Eighth Amendment unless there

15

16   [4] *See also, e.g., McLaughlin v. Farries*, No. 03-60771, 2004 WL 2030365 (5th Cir. Sept. 13, 2004)
(per curiam) (unpublished opinion) (concluding that prisoner's slip and fall on accumulated water
17   from leaky air conditioning unit, which the defendants knew about and failed to clean up was an
appropriate action for negligence but not deliberate indifference); *Reynolds v. Powell*, 370 F.3d
18   1028, 1031 (10th Cir. 2004) (concluding that although prisoner complained for two months about
accumulated water in the shower, and finally sustained injuries from the slippery floor, "while the
19   standing-water problem was a potentially hazardous condition, slippery floors constitute a daily
risk faced by members of the public at large" and is not a sufficiently serious risk of constitutional
20   dimension); *Collier v. Garcia*, No. 17-5841, 2018 WL659014, *2 (N.D. Cal. Jan. 31, 2018)
(dismissing complaint for failure to state a claim when plaintiff slipped and fell even after asking
21   defendants to fix a leak which resulted in a puddle of water in plaintiff's cell); *Wallace v.
Haythorne*, No. 06-1697 MCE GGH P, 2007 WL 3010755, at *2–*4 (E.D. Cal. Oct. 15, 2007)
22   (finding no Eighth Amendment violation when prisoner fell after his foot slipped into a hole in the
floor caused by a missing tile, even if defendants were aware that a non-prisoner employee had
23   previously tripped on one of the holes), *aff'd by* No. 07-17364, 2009 WL 2015051 (9th Cir. July 2,
2009) (unpublished memorandum disposition); *Gilman v. Woodford*, No. 05-0337, 2006 WL
24   1049739 (E.D. Cal. April 20, 2006) (granting qualified immunity to defendants when prisoner
slipped and fell in puddle of water resulting from leaking ceiling, of which defendants knew), *aff'd
25   by* No. 06-16157, 2008 WL 686740 (9th Cir. March 12, 2008) (unpublished memorandum
disposition); *Edwards v. New York*, No. 08-5787, 2009 WL 2596595 (S.D.N.Y. Aug. 24, 2009)
26   ("courts have held that allegations of wet conditions leading to a slip-and-fall will not support a
Section 1983 claim even where . . . the plaintiff [ ] alleges that the individual defendants had
27   notice of the wet condition but failed to address it."); *Santiago v. Guarini*, No. 03-4375, 2004 WL
2137822 (E.D. Pa. 2004) (holding toilet and sink leak in cell, causing slip and fall, did not present
28   substantial risk to inmate's safety, and was not objectively serious conditions).

is some "exacerbating condition[] . . . which render[s] [the prisoner] unable to 'provide for [his] own safety.'" *Osolinski*, 92 F.3d at 938. To state a cognizable claim for relief, there must be some exacerbating condition in addition to the slippery floor. *See Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998) (concluding that "[s]lippery floors without protective measures could create a sufficient danger to warrant relief" when an inmate alleges facts that exacerbate the danger resulting from such conditions). For example, in *Frost*, the prisoner-plaintiff was forced to traverse a wet and slippery shower floor while on crutches and was thus unable to balance himself as well as an uninjured person. *See Frost*, 152 F.3d at 1129. The Ninth Circuit held that the failure to "provide handicapped-accessible accommodations for a pretrial detainee who wears a leg cast and relies on crutches," combined with the risk posed by the wet shower floor, was sufficient to state an Eighth Amendment violation. *Id. Cf. LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) (finding no Eighth Amendment violation where inmate fell on wet and slippery shower floor even though he was shackled at the time).

Here, there is no suggestion that Mr. Poslof possessed some exacerbating condition in addition to the flooded cell such that he was unable to observe the water or was otherwise unable to provide for his own safety. If he chooses to amend, Mr. Poslof must identify something more than a slippery floor or flooded cell to state a viable claim. This claim regarding the conditions of confinement in general population housing is unrelated to Mr. Poslof's other claims, including his claim regarding the conditions of confinement in administrative segregation, *see infra*, and so must be pursued in a separate lawsuit.

### F.     Religion

Mr. Poslof alleges that his First Amendment rights were violated because he was deprived of adequate kosher meals. *See* 6004 Compl. ¶¶ 36–38. He alleges that his kosher meals were "tv dinners" and "way short and tiny compare[d] to the regular meals." *Id*. at 36. He also complains that his kosher meals lacked onions. *See id*. Because he felt the kosher meals were inadequate, Mr. Poslof "was forced to remove himself from the SVSP Religious Diet … Program." *Id*. ¶ 37.

For Mr. Poslof to establish a free exercise violation, he must show that a prison regulation or official burdened the practice of his religion without any justification reasonably related to

legitimate penological interests. *See Shakur v. Schriro*, 514 F.3d 878, 883–84 (9th Cir. 2008). Courts have found that outright denials of kosher meals may violate the First Amendment. *See, e.g., Fuqua v. Raak*, 120 F.4th 1346, 1353, 1355–56 (9th Cir. 2024) (finding a reasonable trier of fact could find that defendant's denial of a kosher meal substantially burdened plaintiff's religious exercise where the denial was based on the chaplain's "own theological assessment of the correctness and internal doctrinal consistency of Fuqua's belief system" rather than focusing on the sincerity of plaintiff's beliefs). But Mr. Poslof must provide some facts to show that his kosher meals were so deficient as to have been effectively denied. Neither a lack of onions nor Mr. Poslof's subjective belief that his meals were "way short and tiny" is a significant enough burden to constitute a free exercise violation. [5]

If the meals provided to Mr. Poslof were nutritionally inadequate, this could violate the Eighth Amendment. *See Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996) (finding that adequate food is a basic human need protected by the Eighth Amendment), *amended*, 135 F.3d 1318 (9th Cir. 1998). To bring such a claim, however, Mr. Poslof must show that the kosher meals were inadequate and not just unappealing. *See e.g., Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1259 (9th Cir. 2016) (finding summary judgment properly granted for defendants because plaintiff failed to provide any evidence that the jail's pregnancy diet (which consisted of regular inmate diet plus a prenatal vitamin and an additional 32 ounces of milk per day) was nutritionally insufficient or inedible); *see also Graves v. Arpaio*, 623 F.3d 1043, 1050 (9th Cir. 2010) (per curiam) (explaining that Eighth Amendment requires that pretrial detainees be given food that meets or exceeds the Department of Agriculture's *Dietary Guidelines*). Mr. Poslof's vague belief that the meals were "tiny" and "way short" is insufficient to establish a claim. *See Mendiola-Martinez*, 836 F.3d at 1243 (concluding evidence that inmate's statement that the diet left her

---

[5] The volume occupied by food does not necessarily equate to calories, and calories do not necessarily equate to nutrients. To illustrate: A tablespoon of peanut butter has almost five times as many calories as a cup of kale, while the cup of kale has more than ten times as much calcium as the tablespoon of peanut butter. *See* University of Rochester Medical Center, Health Encyclopedia, https://www.urmc.rochester.edu/encyclopedia/ (results for "kale" and "peanut butter") (last visited February 20, 2025. Thus, to show that his meals were inadequate, Mr. Poslof must provide facts about the content of those meals.

United States District Court
Northern District of California

"hungry" would not alone establish a condition objectively serious enough to trigger the Eighth Amendment); *LeMaire*, 12 F.3d at 1456 (finding temporary diet of Nutraloaf, which exceeded inmate's daily nutritional requirements, did not violate 8th Amendment). To show that the meals were inadequate, Mr. Poslof must provide facts showing that the meals were calorically insufficient and/or lacked essential nutrients.

On the facts provided, this claim appears unrelated to the other claims raised in the 6004 and 6146 Actions, and so must be pursued in a separate lawsuit. If Mr. Poslof wishes to bring his food claims along with his medication claim or living conditions claims, *see supra* IV.D–E, he must provide facts tying these claims to at least one common defendant.

### G.    Mental Health Treatment

Mr. Poslof appears to claim he was given inadequate mental health care following a suicide attempt. *See* 6146 FAC ¶¶ 23–24. Failure to treat a prisoner's mental health needs may violate the Eighth Amendment. *See Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) (explaining that a mentally ill prisoner may establish unconstitutional treatment on behalf of prison officials by showing that officials have been deliberately indifferent to his serious medical needs); *see also Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982) (analyzing mental health care requirements as part of general health care requirements).

As with Mr. Poslof's other claims, more information is required. Mr. Poslof claims that defendant Mendez exhibited "intentional, deliberate, reckless, callous disregard," 6146 FAC ¶ 23, but does not explain how defendant Mendez specifically harmed Mr. Poslof. To state a cognizable claim, Mr. Poslof must explain who defendant Mendez is, what treatment Mr. Poslof required, whether defendant Mendez knew of this requirement, what defendant Mendez did or failed to do, and how this action or inaction harmed Mr. Poslof. This claim appears unrelated to the other allegations of the 6004 and 6146 Actions, and so must be pursued in a separate lawsuit.

### H.    Use of Force

Mr. Poslof alleges that on August 9, 2024, he was subjected to excessive force by multiple officers. *See* 6146 FAC ¶¶ 22–29. Although this is Mr. Poslof's most complete claim, more information is required.

For an excessive force claim, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992); *Whitley*, 475 U.S. at 320–21; *Jeffers v. Gomez*, 267 F.3d 895, 912–13 (9th Cir. 2001) (applying "malicious and sadistic" standard to claim that prison guards used excessive force when attempting to quell a prison riot but applying "deliberate indifference" standard to claim that guards failed to act on rumors of violence to prevent the riot).

Here, Mr. Poslof alleges he was roughly escorted from one part of the prison to another. *See* 6146 FAC ¶ 27. Mr. Poslof did not want to go to his destination so he resisted by placing himself in a prone position. *See id*. He claims that while he was laying down in the prone position, eight named and fifty unnamed officers "decide[d] to tackle" him and "rough[] him up." *Id*. These fifty-eight officers then "proceeded with their escort by physically carrying [Mr. Poslof] 'hog-style.'" *Id*. ¶ 28. Mr. Poslof tried to wiggle loose and apparently grabbed an officer's belt. *See id*. Mr. Poslof then was either dropped or slammed to the ground, causing a head injury. *See id*. He immediately was taken to the prison's medical facilities, and then to the emergency room. *See id*.

On the one hand, Mr. Poslof's allegations suggest that officers intentionally applied force to his person and that this caused him an injury. *See id*. at ¶¶ 27–28. On the other, his allegations are factually inconsistent, *see id*. at ¶ 27 (stating he was tackled while he already was lying prone on the ground); implausible, *see id*. (stating he was attacked by fifty-eight persons at the same time); and suggest that force may have been necessary to restore discipline, *see id*. at ¶¶ 27–28 (stating that force was applied after he resisted his escort, first by lying on the ground and then by wiggling free of the "hog-tie"). If Mr. Poslof chooses to amend, he must explain why this force was not used in a good-faith effort to restore discipline. For example, if Mr. Poslof was complying with all officers' instructions, it is less likely that force was necessary.

On amendment, Mr. Poslof must identify the officers that harmed him and state precisely what they did. He should avoid exaggerating or editorializing, because this makes it difficult to discern whether the facts give rise to a claim.

Mr. Poslof's excessive force claim appears unrelated to the other claims raised in the 6004 and 6146 Actions, and thus must be pursued in an independent lawsuit.

United States District Court
Northern District of California

### I.    Discipline and Conditions of Administrative Segregation

Mr. Poslof appears to have been placed in administrative segregation at least twice at different times and for different reasons. *See* 6004 Compl. ¶¶ 39–41, 44–45; 6146 FAC ¶¶ 30–33. He challenges the disciplinary decisions that led to his placement in administrative segregation and the conditions he encountered once in segregation. The Court discusses these facts together because Mr. Poslof's pleadings are unclear as to which unsatisfactory conditions followed which placement in administrative segregation. If these events are distinctly separate in time, however, Mr. Poslof may need to pursue his claims in independent lawsuits.

#### 1.    RVR for Contraband

Mr. Poslof states that he was given a rules violation report ("RVR") for possession of heroin and a cellular device. *See* 6004 Compl. ¶ 39. It is unclear when this occurred. *See id*. He claims that he was criminally prosecuted for possession of heroin and found guilty in Monterey County Superior Court. *See id*. ¶ 41. It appears that prison disciplinary proceedings for the RVR followed this conviction. *See id*. ¶¶ 39–41. Mr. Poslof claims that he was denied due process at the disciplinary hearing because the disciplinary officer found him guilty of intent to distribute in addition to simple possession and because his punishment was "unrelated" and overly severe because it excluded him from working certain prison jobs. *See id*. ¶¶ 39–41.

Before Mr. Poslof may proceed on this claim, he must explain exactly how he was punished and whether this punishment lengthened the duration of his confinement. If Mr. Poslof lost good-time credits because of this disciplinary procedure, he must challenge it in a habeas action before he can seek damages in a civil rights action. *See Heck v. Humphrey*, 512 U.S. 477, 486–487 (1994); *Edwards v. Balisok*, 520 U.S. 641, 645–47 (1997) (applying *Heck* bar to claim that officials used unconstitutional procedures in a disciplinary hearing that resulted in the deprivation of time credits if "the nature of the challenge to the procedures [is] such as necessarily to imply the invalidity of the judgment"). Even if Mr. Poslof's claim is not *Heck*-barred, the Court cannot evaluate whether a punishment was unduly severe without being informed of the facts of that punishment.

United States District Court
Northern District of California

As to Mr. Poslof's complaint that the prison disciplinary officer found him liable for more serious conduct than the Monterey County Superior Court, this Court is unaware of any authority holding that such an action would violate due process. It is well-established that the evidentiary standard for prison disciplinary proceedings is far lower than the standard for criminal proceedings. *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (holding that the revocation of good-time credits need only be supported by "some evidence," rather than proven beyond a reasonable doubt); *cf. United States v. Brown*, 59 F.3d 102, 103–04 (9th Cir. 1995) (recognizing that the Double Jeopardy Clause does not preclude criminal prosecution for conduct for which prison authorities have already imposed administrative discipline); *United States v. Newby*, 11 F.3d 1143, 1145 (3d Cir. 1993) (explaining that the Double Jeopardy Clause's protection against successive criminal trials is not implicated because a prison disciplinary proceeding is not a criminal trial). Thus, to the extent Mr. Poslof believes his due process rights were violated by the disciplinary officer's finding of more serious conduct, his claim fails.

### 2.    RVR for Battery

Mr. Poslof states that following the August 9, 2024 incident, *see supra* IV.H, he was assessed an RVR for battering a police officer. *See* 6146 FAC. ¶ 30. He argues that this second RVR was based on false reports by officers. *See id.* ¶¶ 41–46.

First, Mr. Poslof again failed to identify how he was punished because of this RVR, and so the Court cannot determine whether Mr. Poslof's claim is *Heck*-barred. If he wishes to pursue this claim despite the defect identified below, he must specifically state how he was punished and whether this punishment affected the length of his confinement.

Second, a due process claim based on allegedly false reports by officers fails as a matter of law. A prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986).[6] As long as Mr. Poslof was afforded procedural due process in the disciplinary hearing,

---

[6] *See also Garrott v. Glebe*, 600 F. App'x 540, 542 (9th Cir. 2015) (noting there is no federally recognized right for a prisoner to be free from false accusations); *Allah v. California*, 182 F.3d 924

1    which he does not contest, *see generally* 6146 FAC, his allegations of a fabricated charge fail to

2    state a claim under § 1983. *Hanrahan v. Lane*, 747 F.2d 1137, 1140–41 (7th Cir. 1984).

3                  **3.      Conditions in Administrative Segregation**

4         Mr. Poslof challenges the conditions he encountered in administrative segregation, but it is

5    unclear whether he faced unsatisfactory conditions only following his RVR for battery, or whether

6    conditions were also unsatisfactory following his RVR for contraband. *Compare* 6004 Compl. ¶

7    44 (complaining of conditions after the battery RVR but discussing the contraband RVR rather

8    than the battery RVR in the rest of the pleading) *with* 6146 FAC (discussing the battery RVR).

9                              **a.      Tablet**

10        Mr. Poslof claims that while he was housed in administrative segregation, the applications

11   on his prison-provided tablet were restricted. He thus was unable to use the tablet to communicate

12   with persons outside the prison or for entertainment purposes. *See id*. ¶ 44. He claims that this

13   violates the First Amendment and California's "Keeping Families Connected Act." *See id*. ¶ 45.

14        Mr. Poslof has no constitutional right to use a prison-issued tablet to entertain himself. *Cf.*

15   *More v. Farrier*, 984 F.2d 269, 271 (8th Cir.) (concluding there is no fundamental right to a

16   television in prison), *cert. denied*, 510 U.S. 819 (1993). Although he has a First Amendment right

17   to communicate with persons outside prison walls, *see Valdez v. Rosenbaum*, 302 F.3d 1039, 1048

18   (9th Cir. 2002), this right does not require use of a prison-issued tablet. Rather, if some "*means* of

19   exercising this right" is provided, the First Amendment has been satisfied. *Id*. (concluding that loss

20   of telephone privileges did not violate the First Amendment, where prisoner still could receive

21   visitors and use the mail) (emphasis in original). Mr. Poslof does not allege that he was prevented

22   from communicating via telephone or mail, and thus has not stated a cognizable claim that the

23   tablet restrictions violated the First Amendment.

24

25   _____

     (9th Cir. 1999) (unpublished) (affirming the dismissal of a claim that disciplinary results were
26   false, and citing *Freeman,* 808 F.2d at 951, for the rule that an "allegation that filing a false
     disciplinary charge against an inmate is not actionable under § 1983 where procedural due process
27   protections are provided"); *Mulqueen v. Gutierrez*, 934 F.2d 324 (9th Cir. 1991) (unpublished)
     ("Mulqueen was afforded all the process that he was due in his ample disciplinary hearing; there
     was accordingly no violation of procedural due process, even if his allegation of false charges
28   were to be accepted.").

1    The Court will not exercise supplemental jurisdiction over Mr. Poslof's claim that the

2    tablet restrictions violated California's "Keeping Families Connected Act." *See* 28 U.S.C. §

3    1367(c) (explaining when a district court may decline to exercise supplemental jurisdiction). First,

4    this state-law claim has no facts in common with Mr. Poslof's other claims and raises unique

5    issues of state law. Second, Mr. Poslof states on the face of his pleading that his tablet-related

6    claims are unexhausted. *See* 6004 Compl. ¶ 45 (stating that he has not grieved his tablet related

7    claims). Third, before he may file his state-law claim in any court, Mr. Poslof must comply with

8    California's presentation requirements. *See* Cal. Gov't Code § 910 et. seq. Because of these

9    exhaustion and presentation problems, this claim is unlikely to proceed on the same timeline as his

10    other claims.

11    Mr. Poslof's tablet-related claims are dismissed without leave to amend. Dismissal is

12    without prejudice to Mr. Poslof raising his claim for violation of California's "Keeping Families

13    Connected Act" in a state-court action after California's presentation requirements have been

14    fulfilled.

15                                    **b.    Sanitation**

16    Mr. Poslof claims that he was subjected to unsanitary living conditions for the week

17    between August 9 and August 16, 2024. *See* 6146 FAC ¶¶ 30–35. Specifically, he claims that the

18    administrative segregation cell(s) contained "human feces and soiled bedding and clothing," and

19    that during this week "he was denied showers[] and soap, at times even food." *Id*. ¶¶ 31, 30. As a

20    result of these unsanitary conditions, Mr. Poslof contracted a skin fungus. *Id*. ¶ 35.[7] Mr. Poslof's

21    pleading suggests that he was moved between cells during his time in administrative segregation

22    and it is unclear whether every cell was unsanitary and how long he was subjected to the lack of

23    sanitation.

24    If Mr. Poslof provides more facts, he may be able to state an Eighth Amendment claim for

25    the conditions of his cell(s) in administrative segregation. Similar conditions have been held to

26

27    ────────────────

28    [7] Mr. Poslof vaguely states that he was not provided "proper and adequate medical care to treat the skin condition." 6146 FAC ¶ 35. To the extent Mr. Poslof wishes to pursue a medical needs claim, more information must be provided.

violate a prisoner's constitutional rights. *See, e.g., Taylor v. Riojas*, 592 U.S. 7, 8–9 (2020) (holding that four days in a cell covered "nearly floor to ceiling, in massive amounts of feces: all over the floor, the ceiling, the window, the walls, and even packed inside the water faucet," followed by two days in "frigidly cold cell" with sewage on the floor and no bed or clothes such that plaintiff was "left to sleep naked in sewage" violated the Eighth Amendment); *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995) ("[A] lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment."). *See also Keenan*, 83 F.3d at 1091 (finding that food that is spoiled and water that is foul would be inadequate to maintain health and thus violate the Eighth Amendment), *amended*, 135 F.3d 1318 (9th Cir. 1998); *Toussaint v. McCarthy*, 597 F. Supp. 1388, 1412 (N.D. Cal. 1984) (holding that food is constitutionally deficient, even if nutritionally complete, when it is prepared under conditions so unsanitary as to make it unwholesome and a threat to inmates who consume it). To state a cognizable claim, however, Mr. Poslof must provide facts to show that the unsanitary conditions were "severe or prolonged." *Anderson*, 45 F.3d at 1314. For example, if Mr. Poslof encountered one soiled cell and immediately was moved to a clean cell, it is unlikely the Eighth Amendment was violated. But if Mr. Poslof was housed for an entire week in a cell soiled by another person's feces, this likely would violate the Eighth Amendment. Similarly, if Mr. Poslof missed a shower on a single day, this is not a "severe or prolonged" enough deprivation to violate the Eighth Amendment. If he was deprived of showers for an entire week while constantly living in soiled cells, however, the Eighth Amendment may have been violated.

This claim is dismissed with leave to amend so that Mr. Poslof may provide facts showing that the unsanitary conditions were "severe or prolonged." As with his other claims, Mr. Poslof should state the facts of what happened, when it happened, who he holds responsible, why that person is responsible, and how Mr. Poslof was harmed.

## V.    Motions

Between the 6004 and 6146 Actions, Mr. Poslof has nineteen pending motions. The Court shall endeavor to address all the pending motions here.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.    Requests for injunctive relief

All of Mr. Poslof's motions seeking injunctive relief are denied.

A party seeking a preliminary injunction must generally meet one of two variants of the same standard. The traditional *Winter* standard requires the movant to show that (1) it "is likely to succeed on the merits;" (2) it "is likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of equities tips in [its] favor;" and (4) "an injunction is in the public interest." 555 U.S. at 20. Under the "sliding scale" variant of the same standard, "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (emphasis in original) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). In other words, regardless of the robustness of the showing on the merits required, a plaintiff must demonstrate he or she is likely to suffer irreparable injury in the absence of preliminary relief. It is the plaintiff's burden to fulfill all four elements. *See DISH Network Corp.,* 653 F.3d at 776–77 (noting that the plaintiff "must demonstrate that it meets all four of the elements of the preliminary injunction test" "[t]o warrant a preliminary injunction," and concluding that because the plaintiff had failed to satisfy its burden as to one element, the Ninth Circuit "need not consider the remaining three").

In actions filed by prisoners, requests for injunctive relief are further limited by the Prison Litigation Reform Act ("PLRA"). Before a court may grant a prisoner's request for an injunction, the PLRA requires that the court find "that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1). Courts also are required to "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." *Id.*

Here, Mr. Poslof asks the Court to order defendants to refrain from retaliating against him, to return certain property, to grant him full tablet access, to improve the conditions of his confinement, to file a class action on his behalf, and to give the SVSP librarian instructions

1    regarding court filings. *See* 6004 Action, Dkt. Nos. 6, 14, 17, 21, 22; 6146 Action, Dkt. Nos. 2, 18.

2         The first problem with Mr. Poslof's requests for injunctive relief is procedural. The Court

3    cannot issue an injunction against any defendant until it has personal jurisdiction over that

4    defendant, and it cannot exercise personal jurisdiction over a defendant until Mr. Poslof has

5    submitted a servable pleading. *See Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104

6    (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural

7    requirement of service of summons must be satisfied."). Because Mr. Poslof has yet to file a

8    cognizable claim, his requests for injunctive relief are premature.

9         The other problems with Mr. Poslof's motions are substantive. Mr. Poslof has not

10   requested any relief which may properly be granted in an injunction. Several of these requests for

11   relief are unrelated to the pleadings, such as requests for orders against the SVSP librarian. *See*

12   *Freeman v. Pitts*, 503 U.S. 467, 489 (1992) (explaining that injunctive relief is justified "only

13   insofar as it advances the ultimate objective of alleviating the initial . . . violation"). There must be

14   a "sufficient nexus" between the injunctive relief sought and the allegations raised in the

15   complaint before injunctive relief may be granted. *Armstrong v. Newsom*, 58 F.4th 1283, 1292

16   (9th Cir. 2023). Thus, if Mr. Poslof wants the Court to order the SVSP librarian to perform a

17   specific action, Mr. Poslof first must bring a cognizable claim, supported by particularized facts,

18   against the librarian.

19        With respect to the relief requests that are related to the pleadings, Mr. Poslof seeks relief

20   from events which have already concluded. Injunctive relief is designed to prevent ongoing and/or

21   future harm, not to remedy harm which already has occurred. *See Winter*, 555 U.S. at 20

22   (requiring the movant to show he "is likely to suffer irreparable harm"). A Court order directing

23   defendants to cease already-concluded conduct would be pointless. To obtain money damages for

24   harm which already has occurred, Mr. Poslof must litigate his lawsuit(s) to conclusion.

25        Finally, for Mr. Poslof's benefit, the Court advises him to think carefully before filing

26   additional TRO motions. *See Sivak v. Murphy*, 995 F.2d 233 n.1 (9th Cir. 1993) ("If Sivak suffers

27   a serious deprivation of his constitutional rights in prison some day, he may not be able to

28   convince the magistrate, the district court or this court of this fact because of his incessant

litigation over relatively trivial matters. *Cf. Aesop's Fables,* 'The Boy Who Cried Wolf.'"). When a plaintiff files multiple motions in a short period, the volume of filings may prevent the Court from seeing a true emergency.

### 2.    Sanctions and contempt motions

Mr. Poslof filed multiple motions asking the Court to hold defendants in contempt and to impose sanctions upon them. *See* 6004 Action, Dkt. Nos. 23, 24, 27. These motions are denied. As explained above, Mr. Poslof has not yet filed a servable complaint in any action. Because no defendants have been served, the Court has not yet exercised personal jurisdiction over them. Defendants have not been ordered to take any action, much less flouted any court order.

### 3.    Administrative motions

Mr. Poslof moved to expedite his cases and/or for screening of his pleadings. *See* 6004 Action Dkt. Nos. 21, 28, 34. These motions are granted to the extent that this order screens Mr. Poslof's pleadings. The motions are denied to the extent that Mr. Poslof seeks to alter the Court's practices. The Court will continue to review Mr. Poslof's filings, along with the hundreds of other filings that are submitted daily, in due course.

Mr. Poslof moved for a hearing. 6004 Action, Dkt. No. 20. This motion is denied. Due to the logistical difficulties posed by incarceration, hearings are rarely held in cases involving pro se prisoners.

Mr. Poslof filed a motion "to lodge exhibits," which appears to seek copies of all documents he has filed with the Court. This motion is denied without prejudice to renewal. Mr. Poslof has filed hundreds of pages, and it is unduly burdensome to ask the Court to make a copy of every page for Mr. Poslof. The Clerk shall send Mr. Poslof a form on which he can request copies of specific documents. The Court notes for Mr. Poslof's benefit that he will be charged $0.50 per photocopied page.

## VI.    Amendment

Mr. Poslof moved to amend his pleadings. 6004 Action, Dkt. No. 12. The motion is granted. Assuming the claims are properly joined, not barred by abstention or exhaustion issues, and supported by adequate facts, Mr. Poslof may add his claims against the SVSP librarian and

United States District Court
Northern District of California

Dr. Mendez to any amended complaint he chooses to file. The proposed claims submitted in the amendment motion are insufficient at this time because they do not include specific facts showing which actions these defendants took (or did not take) which harmed Mr. Poslof.

Mr. Poslof moved to consolidate his cases. 6004 Action, Dkt. No. 13. This motion is denied. On amendment, Mr. Poslof may re-organize his claims so that related claims are brought in the same case. As explained above, however, many of Mr. Poslof's claims are unrelated to the remainder of his pleadings. These claims must be pursued in their own independent lawsuits.

If he chooses to amend his claims, Mr. Poslof must remedy the defects identified above. The Court notes for Mr. Poslof's benefit that with this amendment he will have used his single opportunity to amend as a matter of course. *See* Fed. R. Civ. P. 15(a)(1). Any further amendments will require the Court's leave. *See* Fed. R. Civ. P. 15(a)(2). If Mr. Poslof continues to submit prolix pleadings containing barred claims, the Court will be less likely to grant future requests for amendment.

**VII.    Conclusion**

1.    Mr. Poslof has yet to state any cognizable claim. As explained above, only some defects are curable. The 6004 Complaint and 6146 First Amended Complaint are therefore DISMISSED WITH LEAVE TO AMEND IN PART. If he truthfully can provide facts to support a claim, Mr. Poslof may amend his claims as explained above.

2.    Mr. Poslof's amended pleadings shall be filed within **thirty-five days** from the date this order is filed. In his amended pleadings, Mr. Poslof must allege facts that demonstrate he is entitled to relief on every claim he chooses to bring. He also must specify, for every claim filed, why that claim is not barred by the abstention, exhaustion, and joinder rules discussed above. *See supra* III.A–C.

3.    An amended complaint supersedes the original complaint. *See London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981) ("[A] plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint."); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262–63 (9th Cir. 1992) (where an amended complaint did not name all the defendants to an action, they were no longer defendants).

4.    It is Mr. Poslof's responsibility to prosecute this case. He must keep the Court informed of any change of address by filing a separate paper with the Clerk headed "Notice of Change of Address." He also must comply with the Court's orders in a timely fashion. Failure to do so will result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

5.    Mr. Poslof is cautioned that he must include the case name and case number on any document he submits to the Court for consideration.

6.    Mr. Poslof's motions for injunctive relief, contempt or sanctions, and administrative action are DENIED. *See* 6004 Action, Dkt. Nos. 2, 6, 8, 12–14, 17, 20–24, 27, 28, 31; 6146 Action, Dkt. Nos. 2, 18.

7.    Mr. Poslof's motion to proceed *in forma pauperis* is GRANTED. *See* 6004 Action, Dkt. No. 3. The initial partial filing fee is $3.48. *See* 28 U.S.C. § 1915(b)(1) (requiring a court to assess an initial filing fee of 20 percent of a prisoner's average monthly deposits or monthly balance, whichever is greater). A copy of this order and the attached instructions will be sent to Mr. Poslof via U.S. mail, and to the California Department of Corrections and Rehabilitation (CDCR) and the court's financial office via email at trusthelpdesk@cdcr.ca.gov and CAND_Finance@cand.uscourts.gov.

8.    The Clerk shall enclose with this order the Court's form entitled "Request for Photocopies."

9.    The Clerk shall file this order in both the 6004 and the 6146 Action. The Clerk also shall send a copy of this order to the SVSP Litigation Coordinator(s) via email at CDCRSVSPLitigationCoordinator@cdcr.ca.gov. The Court asks the SVSP Litigation Coordinator(s) to assist Mr. Poslof in accessing the law library and in mailing legal materials.

**IT IS SO ORDERED.**

Dated: March 12, 2025

P. Casey Pitts
United States District Judge

28

*United States District Court*
*Northern District of California*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

## INSTRUCTIONS FOR PAYMENT OF PRISONER'S FILING FEE

The prisoner shown as the plaintiff or petitioner on the attached order has filed a civil action in forma pauperis in this court and owes to the court a filing fee. Pursuant to 28 U.S.C. § 1915, the fee is to be paid as follows:

The initial partial filing fee listed on the attached order should be deducted by the prison trust account office from the prisoner's trust account and forwarded to the clerk of the court as the first installment payment on the filing fee. This amount is twenty percent of the greater of (a) the average monthly deposits to the prisoner's account for the 6-month period immediately preceding the filing of the complaint/petition or (b) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint/petition.

Thereafter, on a monthly basis, 20 percent of the preceding month's income credited to the prisoner's trust account should be deducted and forwarded to the court each time the amount in the account exceeds ten dollars ($10.00). The prison trust account office should continue to do this until the filing fee has been paid in full.

If the prisoner does not have sufficient funds in his/her account to pay the initial partial filing fee, the prison trust account office should forward the available funds, and carry the balance forward each month until the amount is fully paid. If the prisoner has filed more than one complaint, (s)he is required to pay a filing fee for each case. The trust account office should make the monthly calculations and payments for each case in which it receives an order granting in forma pauperis and these instructions.

The prisoner's name and case number must be noted on each remittance. The initial partial filing fee is due within thirty days of the date of the attached order. Checks should be made payable to Clerk, U.S. District Court and sent to Prisoner Accounts Receivable, U.S. District Court, 450 Golden Gate Avenue, Box 36060, San Francisco, CA 94102.

cc:    Plaintiff/Petitioner

Court's Finance Office
United States District Judge