UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONNIE LEE POSLOF,<br><br>    Plaintiff,<br><br>v.<br><br>CARLOS ARCE, et al.,<br><br>    Defendants. | Case No. 24-cv-06004-PCP<br>24-cv-06146-PCP<br><br>**ORDER DISMISSING 6146 ACTION WITH LEAVE TO AMEND IN PART; DISMISSING 6004 ACTION WITH PREJUDICE; DENYING MOTIONS TO SHOW CAUSE; GRANTING MOTIONS FOR A SCREENING ORDER**<br><br>Re: Dkt. Nos. 38, 48 in Case No. 24-cv-06004; Dkt. Nos. 29, 35, 37 in Case No. 24-cv-06146 |

Lonnie Poslof, an inmate at the Salinas Valley State Prison ("SVSP") in Soledad, California, has two pending *pro se* civil rights actions filed under 42 U.S.C. § 1983. *See Poslof v. Arce*, Case No. 24-cv-6004-PCP (N.D. Cal. filed Aug. 21, 2024) ("6004 Action"); *Poslof v. Cal. Dep't of Corr. & Rehab.*, Case No. 24-6146-PCP (N.D. Cal. filed Aug. 25, 2024) ("6146 Action").

Mr. Poslof's motions to show cause are denied. Mr. Poslof's motions for a screening order are granted, in that this order screens the Second Amended Complaints.

For the reasons stated below, the 6146 Action is dismissed with leave to amend as to Mr. Poslof's excessive force and state-law claims only. All other claims are dismissed with prejudice. There being no surviving claims other than those pending in the 6146 Action, the 6004 Action is dismissed with prejudice.

**I.    Procedural Background**

The facts underlying Mr. Poslof's claims are discussed in the sections analyzing each claim. *See infra* III.

In August 2024, Mr. Poslof filed five civil rights actions in this District.[1] The first lawsuit was dismissed on abstention grounds and for failure to prosecute, and Mr. Poslof voluntarily dismissed the second and third actions.

Mr. Poslof moved to amend the Complaint in the 6004 Action and filed a First Amended Complaint in the 6146 Action. The Court reviewed the pleadings pursuant to 28 U.S.C. § 1915A, and in one order dismissed every claim. Dkt. No. 28.[2] The Court granted leave to amend as to some claims and provided detailed instructions on how to amend. *See id*.

Mr. Poslof subsequently filed a Second Amended Complaint in the 6146 Action, and a First Amended Complaint and then a Second Amended Complaint in the 6004 Action. The operative pleading in each action thus is a Second Amended Complaint. The Second Amended Complaint is identical in both actions. *Compare* Dkt. No. 32 *with* Dkt. No. 47 in the 6004 Action.

Mr. Poslof's Second Amended Complaint now is before the Court for review.

## II.   Legal Standard

Federal courts must screen any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The court must identify cognizable claims and dismiss claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Even though a pro se litigant is entitled to a liberal interpretation of his complaint, that complaint still "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017) (affirming dismissal of a pro se prisoner complaint which did not meet the plausibility standard)

---

[1] *See Poslof v. Arce*, Case No. 24-cv-5444-PCP (N.D. Cal., injunctive relief motion filed Aug. 15, 2024); *Poslof v. Arce*, Case No. 24-cv-5446-PCP (N.D. Cal., mandamus petition filed Aug. 12, 2024); *Poslof v. Warden*, Case No. 24-5447-PCP (N.D. Cal., mandamus petition filed Aug. 14, 2024); 6004 Action; 6146 Action.

[2] Unless otherwise noted, citations refer to documents filed in the 6146 Action.

(citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

**III.   Analysis**

In his Second Amended Complaint, Mr. Poslof states that he wishes to sue for excessive force, false disciplinary reports, deliberate indifference to his medical needs, deprivation of access to the courts, intentional infliction of emotional distress, and violation of California's Bane Act. *See* SAC at 13–18. Only these claims are at issue.[3] *See London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981) ("[A] plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint."); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262–63 (9th Cir. 1992) (where an amended complaint did not name all the defendants to an action, they were no longer defendants).

**A.   Abstention and Exhaustion**

In his FAC, Mr. Poslof stated that he had filed state court lawsuits regarding the same events complained of therein, and that he was pursuing unexhausted claims. In its order screening the FAC, the Court explained that Mr. Poslof could not pursue claims that were unexhausted, nor claims that were barred under the *Younger* or *Rooker-Feldman* abstention doctrines. *See* Dkt. No. 28 at 3–5 (citing references to state court litigation and unexhausted claims). Because Mr. Poslof had raised these issues, the Court required Mr. Poslof to state on amendment whether each claim had been exhausted and/or had been raised in state court.

Rather than the claim-by-claim response required by the Court, Mr. Poslof makes blanket

---

[3] In the SAC, Mr. Poslof discusses unsanitary housing conditions and damage to property but does not bring a claim for these alleged wrongs. *Cf.* SAC at 13–19 (listing claims). The Court notes that Mr. Poslof already has pursued a state-court action regarding these alleged wrongs. *See infra* III.D (describing Mr. Poslof's state-court litigation). The Court previously cautioned Mr. Poslof that he could neither simultaneously pursue state- and federal-court actions on the same issue, nor could he challenge an unsatisfactory state-court decision in federal court. *See* Dkt. No. 28 at 2–5 (explaining the *Younger* and *Rooker-Feldman* abstention doctrines). Mr. Poslof asserts that his federal actions "ha[ve] nothing to do with the cases filed in the state Court," and indicates he will voluntarily dismiss his 6004 Action and proceed only with his 6146 Action to "eliminate confusion and misunderstanding." Dkt. No. 29 at 2. The Court therefore assumes that Mr. Poslof intends only to pursue the numbered claims and has voluntarily dismissed the claims which appear also to have been the subject of state-court litigation.

statements that he fully exhausted all claims before filing suit, and that his claims have not been raised to state courts and therefore abstention is not required. *See* Dkt. No. 28; *see also* SAC at 19. Mr. Poslof asks the Court to obtain and review state court records to evaluate his abstention argument, *see* Dkt. No. 29, and attaches incomplete and disorganized administrative records to support his exhaustion argument, *see* SAC at 20–116.

For screening purposes, the Court will **assume** that abstention is not required and that Mr. Poslof has exhausted his claims. **This is not a finding on either issue**. At a later time and with a complete record, defendants may be able to move to dismiss Mr. Poslof's actions on either ground.

### B.     Supervisory Defendants

The Court previously explained to Mr. Poslof that he could not sue defendants merely because they supervised others. *See* Dkt. No. 28 at 7–9. In the SAC, Mr. Poslof sues Warden Arce and Deputy Wardens Ortega, Schuyler, and Fonseca (together, "Executive Defendants") because they "were responsible for the discipline and supervision of all named defendants and are each personally involved when they were contacted by the plaintiff himself." SAC at 2–3.

Again, Mr. Poslof cannot sue the Executive Defendants merely because they supervise others. *See Ashcroft,* 556 U.S. at 677 ("In a § 1983 suit … each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("There is no respondeat superior liability under section 1983."). That the Executive Defendants "were responsible for the discipline and supervision" of other defendants does not render them liable.

Similarly, the fact that Mr. Poslof told the Executive Defendants of his injuries after those injuries occurred does not render them liable. Mr. Poslof's admission that the Executive Defendants learned of his injuries after the fact shows that the Executive Defendants did not actually and proximately injure Mr. Poslof. *See Lemire v. Cal. Dept. of Corr. & Rehab.*, 726 F.3d 1062, 1085 (9th Cir. 2013).

The Executive Defendants are DISMISSED from this action WITHOUT LEAVE TO AMEND.

4

### C. Medical Needs Claim

Mr. Poslof claims he was given inadequate mental health care by Defendant Mendez, a doctor at SVSP, and various Doe defendants employed in providing mental health care at SVSP. *See* SAC at 4, 15–16. This claim fails because Mr. Poslof's allegations reveal he was given prompt medical care.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc); *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986). The failure to provide prescribed medication properly may constitute deliberate indifference. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012) (finding plaintiff stated a claim for deliberate indifference where plaintiff's failure to receive prescribed treatment was due to defendant's failure to properly request the treatment and then inexplicable cancellation of a second treatment request). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *See McGuckin*, 974 F.2d at 1059. Failure to treat a prisoner's mental health needs may violate the Eighth Amendment. *See Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) (explaining that a mentally ill prisoner may establish unconstitutional treatment on behalf of prison officials by showing that officials have been deliberately indifferent to his serious medical needs); *see also Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982) (analyzing mental health care requirements as part of general health care requirements).

Mr. Poslof states that he "suffers from numerous conditions including hearing voices," and "takes numerous medications to treat his conditions." SAC at 7. He claims that between August 7 and August 9, 2024, he harmed himself three times. *Id*. He was placed on suicide watch. *See id*.

After several days on suicide watch, Mr. Poslof "noticed" that he was no longer receiving one-on-one observation, but the occupant of a neighboring cell was. *See id*. Mr. Poslof asked the nurse observing his neighbor why Mr. Poslof was no longer receiving one-on-one attention. The

nurse responded that Mr. Poslof was "no longer on one-on-one suicidal watch," *Id*. Mr. Poslof responded that he "[was] suicidal and [he was] going to act on it," tore open his mattress, and used cloth from the mattress to make a rope with which be began to strangle himself. *Id*. The unit officer walked up to Mr. Poslof's cell "and demanded that Mr. Poslof remove this cloth from his neck." *Id*. When Mr. Poslof was nonresponsive, this officer immediately "pressed his emergency code button, summoning the other officers." *Id*. Medical staff entered the cell, handcuffed Mr. Poslof, took him to a nurse for examination, and then placed him in a holding cage. *See id*.

Later that day, while Mr. Poslof still was under observation by staff, Defendant Mendez visited him. *See id*. at 8. Mr. Poslof informed Defendant Mendez that he was suicidal, and Defendant Mendez stated that he did not believe Mr. Poslof. *See id*. "This is when Mr. Poslof decided to look for something that will cut his arm," found a broken piece of plastic, and applied it to his inner forearm. *See id*. "[T]hen the officers and Defendant Mendez called for a code again to be seen by a nurse." *Id*.

Mr. Poslof never claims to have been deprived of appropriate medication, and his allegations reveal that he never was deprived of mental health care. When he harmed himself, he was placed on suicide watch. When he felt neglected and threatened suicide, officers immediately intervened to stop him and immediately obtained medical care for him. When he again attempted to harm himself with a piece of plastic, medical staff again was immediately summoned. Per his own statements, no defendant was deliberately indifferent to Mr. Poslof's mental health needs.

The Court previously dismissed this claim because it was unsupported by facts and needed to be pursued in a separate action. *See* Dkt. No. 28 at 17. Now that Mr. Poslof provides additional facts, his claim fails as a matter of law. The medical needs claim accordingly is DISMISSED WITHOUT LEAVE TO AMEND and WITH PREJUDICE.

### D.     Excessive Force Claim

Mr. Poslof alleges that on August 9, 2024, he was subjected to excessive force by multiple officers. *See* SAC at 8–10. As defendants to this claim, he names SVSP officers Adams, Aguirre, De La Rosa, Escalante, Espinosa, Lopez-Vargas, Obodozie, Parks, Retamoza-Ramirez, Reynoso, Santana-Zambrano, and twenty-five Doe defendants. *Id*. at 2–3.

For an excessive force claim, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992); *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *Jeffers v. Gomez*, 267 F.3d 895, 912–13 (9th Cir. 2001) (applying "malicious and sadistic" standard to claim that prison guards used excessive force when attempting to quell a prison riot but applying "deliberate indifference" standard to claim that guards failed to act on rumors of violence to prevent the riot).

Here, Mr. Poslof alleges that he had a meeting with Defendant Adams on August 9, 2024, regarding Mr. Poslof's housing assignment. SAC at 8. Mr. Poslof remained in Defendant Adams's office "for about five hours," and "ended up falling asleep in this office in the chair." *Id*. at 9. He "was rudely awakened" by defendants De La Rosa, Escalante, Espinosa, Lopez-Vargas, Obodozie, Retamoza-Ramirez, Santana-Zambrano, and ten Doe defendants. *Id*. These defendants "grabbed Mr. Poslof's forearms . . . then slammed [him] to the ground [o]n the office floor." *Id*. "[A]ll officers began to lift Mr. Poslof and walked him out as a hogtied victim then again slammed Mr. Poslof's face into the concrete." *Id*. Mr. Poslof represents that these officers' actions were captured by their body cameras and by unit stationary cameras, and that "Mr. Poslof has personally reviewed th[is] footage[]." *Id*. Mr. Poslof was taken to a nearby hospital and given "3–4 stitches." *Id*. at 10.

With additional details, Mr. Poslof may be able to state an excessive force claim against defendants De La Rosa, Escalante, Espinosa, Lopez-Vargas, Obodozie, Retamoza-Ramirez, Santana-Zambrano, and the ten Doe defendants. Mr. Poslof should explain which defendant took each injurious action. For example, seventeen defendants could not simultaneously grab Mr. Poslof's two forearms, so Mr. Poslof should either name the defendants whose hands touched his forearms, or state that he is unsure which defendants did so. Similarly, "all officers" could not simultaneously lift Mr. Poslof; even if all seventeen officers stood perfectly shoulder-to-shoulder, the diameter of that circle would be far larger than a single person. Mr. Poslof should identify which officers were in physical contact with his person, and when, and which officers were nearby but not actually touching him, and when. If Mr. Poslof recalls physical contact, or can see it in the

7

footage, but cannot identify the responsible officer, then he should state as much rather than implausibly claiming that all officers took that action at the same time.

Mr. Poslof names an additional eighteen defendants to this claim without identifying any wrongdoing on their part. *Compare* SAC at 2–3 (naming defendants Adams, Aguirre, Parks, and an additional fifteen Doe defendants) *with id*. at 8–10 (not stating what these defendants did during the excessive force incident). Indeed, the facts suggest these defendants may not have been present during the application of force to Mr. Poslof's person. *See e.g., id*. (stating that defendant Adams had left the office). On amendment, Mr. Poslof must either dismiss these defendants or identify exactly what they did during the excessive force incident.

The Court previously warned Mr. Poslof to "avoid exaggerating or editorializing, because this makes it difficult to discern whether the facts give rise to a claim." Dkt. No. 28 at 18. The Court reminds Mr. Poslof of this warning and gives Mr. Poslof **one final opportunity** to provide plausible facts implicating all named defendants.

### E. Disciplinary Reports Claim

Mr. Poslof claims that he was assessed a rules violation report ("RVR") and subsequently placed in administrative segregation following "false[] claim[s] Mr. Poslof had committed the acts of 'battery on a peace officer.'" *See* SAC at 14–15.

The Court already explained to Mr. Poslof that this claim fails as a matter of law. *See* Dkt. No. 28 at 20–21. A prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986).[4] As long as Mr. Poslof was afforded procedural due process in the disciplinary

---

[4] *See also Garrott v. Glebe*, 600 F. App'x 540, 542 (9th Cir. 2015) (noting there is no federally recognized right for a prisoner to be free from false accusations); *Allah v. California*, 182 F.3d 924 (9th Cir. 1999) (unpublished) (affirming the dismissal of a claim that disciplinary results were false, and citing *Freeman,* 808 F.2d at 951, for the rule that an "allegation that filing a false disciplinary charge against an inmate is not actionable under § 1983 where procedural due process protections are provided"); *Mulqueen v. Gutierrez*, 934 F.2d 324 (9th Cir. 1991) (unpublished) ("Mulqueen was afforded all the process that he was due in his ample disciplinary hearing; there was accordingly no violation of procedural due process, even if his allegation of false charges were to be accepted.").

8

1  hearing, which he does not contest, *see generally* SAC, his allegations of a fabricated charge fail
2  to state a claim under § 1983. *Hanrahan v. Lane*, 747 F.2d 1137, 1140–41 (7th Cir. 1984).
3       Mr. Poslof's claim that officers filed false disciplinary reports against him is DISMISSED
4  WITHOUT LEAVE TO AMEND and WITH PREJUDICE.

### F. State-Law Claims

Mr. Poslof asserts state-law claims for intentional infliction of emotional distress ("IIED") and violation of California's Bane Act. SAC at 17–18.

Mr. Poslof premises his IIED claim on the assault. *See id.* at 18. Because Mr. Poslof's mental injury is tied to an underlying physical injury, the IIED claim will be cognizable once Mr. Poslof states a cognizable excessive force claim. *Cf.* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).)

The viability of Mr. Poslof's claim under the Bane Act likewise depends upon his stating a cognizable excessive force claim. The Bane Act was enacted to address hate crimes and civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out "by threat, intimidation or coercion." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040–41 (9th Cir. 2018) (quoting Cal. Civ. Code § 52.1(a)). The elements of a Bane Act claim are essentially identical to the elements of a § 1983 claim, with the added requirement that the government official had a specific intent to violate a constitutional right. *See Chinaryan v. City of Los Angeles*, 113 F.4th 888, 907 (9th Cir. 2024). In the excessive force context, it is not enough for the Bane Act plaintiff to show an intention to use force that the jury ultimately finds unreasonable; rather, the plaintiff must show that "the defendants 'intended not only the force, but its unreasonableness, its character as "more than necessary under the circumstances."'" *Reese*, 888 F.3d at 1045 (citations omitted). Here, if Mr. Poslof can provide facts suggesting officers indeed slammed his face into the ground twice, that would be sufficient to state a claim under the Bane Act against those officers.

### G. Court Access Claim

Mr. Poslof claims he was deprived of access to the courts by Defendant Tomlinson, an SVSP librarian. Mr. Poslof alleges that Defendant Tomlinson refused to provide Mr. Poslof with "[ten] copies" of certain documents, instead informing him that "[three] will suffice." SAC at 12, 31. Mr. Poslof argues that this deprived him of the chance "to file with the California Supreme Court." *Id*. Mr. Poslof also alleged that Defendant Tomlinson refused to e-file certain papers on his behalf, citing court rules that only pleadings and other case-opening documents could be e-filed in a 42 U.S.C. § 1983 action. *Id*. at 11–12. The Court therefore assumes Mr. Poslof intended also to claim that Defendant Tomlinson prevented him from litigating in this District. The exhibits to the SAC show that Defendant Tomlinson's actions occurred on several days in September 2024, after the 6004 and 6146 Actions were filed. *See id*. at 28–34 (showing Mr. Poslof requested copies on various days in September 2024).

Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996). To establish a claim for any violation of the right of access to the courts, the prisoner must prove that there was an inadequacy in the prison's legal access program that caused him an actual injury. *See id.* at 349–51. To prove an actual injury, the prisoner must show that the inadequacy in the prison's program hindered his efforts to pursue a non-frivolous claim concerning his conviction or conditions of confinement. *See id.* at 351, 354–55. The prisoner must describe the underlying non-frivolous claim well enough to show that "the 'arguable' nature of the underlying claim is more than hope." *Christopher v. Harbury*, 536 U.S. 403, 416 (2002) (footnote omitted).

Here, Mr. Poslof does not describe an underlying non-frivolous claim and so fails to state an essential element of a court-access claim. *See generally* SAC. Judicially noticeable facts reveal that amendment would be futile because Mr. Poslof did not suffer any actual injury because of Defendant Tomlinson's actions.[5]

---

[5] The Court properly may consider state court records and its own docket. *See U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (Federal courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.") (internal citation and quotation marks omitted). Court orders and other court documents are proper subjects of judicial notice, *see id*., as are records of

10

|   |   |
|---|---|
| 1 | As to his ability to litigate in state court, judicially noticeable facts reveal that Defendant Tomlinson's actions did not prevent Mr. Poslof from accessing the California Supreme Court. At the time Mr. Poslof requested copies from Defendant Tomlinson, he already had an appeal pending at the California Supreme Court regarding the conditions of his confinement during a period of administrative segregation. *See Poslof v. Allen*, Appeal No. S286650 (Cal. S.Ct. filed Aug. 29, 2024, summarily denied October 2, 2024) (stating that this was an appeal from the Fifth Appellate District); *see also Poslof v. Allen*, Appeal No. F088390 (Cal. Ct. App. filed July 26, 2024, summarily denied Aug. 15, 2024) (describing the subject matter of the appeal). The docket reveals that Mr. Poslof filed a request for judicial notice in that appeal on September 24, 2024. *See id.* As Defendant Tomlinson pointed out to Mr. Poslof, the California Supreme Court requires only "an original and [two] copies of any supporting document," such as a request for judicial notice, rather than the ten copies requested by Mr. Poslof. *Compare* Cal. Ct. R. 8.44(a)(3) *with* SAC at 31. It is thus apparent that Defendant Tomlinson's provision of three copies rather than ten did not prevent Mr. Poslof from accessing the California Supreme Court during the time in question to litigate his ongoing appeal. Nor did Defendant Tomlinson's actions prevent Mr. Poslof from filing a habeas action in the California Supreme Court: Judicially noticeable records reveal that Mr. Poslof asked the California Supreme Court to review a lower court's denial of a habeas petition on February 7, 2025. *See In re Poslof on H.C.*, Appeal No. S289199 (Cal. S.Ct. filed February 7, 2025, summarily denied March 19, 2025). His lack of success before the California Supreme Court notwithstanding, judicially noticeable records reveal that Mr. Poslof was able to access that Court. |

As to his ability to litigate in federal court, Defendant Tomlinson's refusal to e-file non-pleadings on Mr. Poslof's behalf did not deprive him of court access and was in accordance with this District's rules. This District requires inmates at certain prisons "to submit to the Court case-initiating documents for civil rights cases by electronic mail." N.D. Cal. Gen. Order 76. Case-initiating documents include "an initial complaint" and "a document submitted together with an

---

court proceedings, *see Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006). A court "may take judicial notice on its own" or after a party requests that it do so. Fed. R. Evid. 201(c).

initial complaint." *Id*. at 76(3). "All documents other than" these case-initiating documents "shall be sent and served through the mail." *Id*. at 76(9). Mr. Poslof's own allegations reveal that he was not attempting to submit case-initiating documents, so Defendant Tomlinson's refusal to e-file those documents was correct and cannot be said to have deprived Mr. Poslof of access to the courts. Indeed, this court's records reveal that Mr. Poslof was actively litigating five civil rights actions by September 2024 and filed several dozen documents during that month alone. *See Poslof v. Arce*, Case No. 24-cv-5444-PCP (N.D. Cal., filed Aug. 15, 2024, dismissed Jan. 3, 2025); *Poslof v. Arce*, Case No. 24-cv-5446-PCP (N.D. Cal., filed Aug. 12, 2024, dismissed Jan. 3, 2025); *Poslof v. Warden*, Case No. 24-5447-PCP (N.D. Cal., filed Aug. 14, 2024, dismissed Jan. 3, 2025); 6004 Action (filed Aug. 21, 2024); 6146 Action (filed Aug. 25, 2024).

Because Mr. Poslof fails to state a court-access claim, and judicially noticeable facts reveal that amendment would be futile, Mr. Poslof's claim for denial of access to the courts is DISMISSED WITHOUT LEAVE TO AMEND and WITH PREJUDICE.

## IV.   Conclusion

1. Mr. Poslof may be able to state cognizable claims for the use of excessive force, intentional infliction of emotional distress, and violation of California's Bane Act. These claims are dismissed with leave to amend. Amendment shall be in the 6146 Action. Leave to amend extends **only** as to these three claims.

2. Mr. Poslof's other claims are not cognizable and are dismissed with prejudice. There being no surviving claims in the 6004 Action, that lawsuit is dismissed with prejudice for failure to state a claim.

3. Mr. Poslof's motions to show cause are denied. His motions for a screening order are granted.

4. Mr. Poslof's THIRD AMENDED COMPLAINT in the 6146 Action shall be filed within **thirty-five days** from the date this order is filed. The third amended complaint must include the caption and civil case number used in this order (24-cv-6146-PCP) and the words THIRD AMENDED COMPLAINT on the first page. In his third amended complaint, Mr. Poslof must allege facts that demonstrate he is entitled to relief on his claims for excessive force,

intentional infliction of emotional distress, and violation of California's Bane Act. An amended complaint supersedes the original complaint. *See London*, 644 F.2d at 814 ("[A] plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint."); *Ferdik*, 963 F.2d at 1262–63 (where an amended complaint did not name all the defendants to an action, they were no longer defendants).

5. It is Mr. Poslof's responsibility to prosecute this case. He must keep the Court informed of any change of address by filing a separate paper with the Clerk headed "Notice of Change of Address." He also must comply with the Court's orders in a timely fashion. Failure to do so will result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

6. Mr. Poslof is cautioned that he must include the case name and case number on any document he submits to the Court for consideration.

7. The Clerk shall file this order in both the 6004 and the 6146 Actions.

**IT IS SO ORDERED.**

Dated: October 27, 2025

P. Casey Pitts
United States District Judge